IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DIEMETRIUS JOHNSON,

    Plaintiff,

vs.                              Case No. 13-1356-JTM

CAROLYN W. COLVIN, Commissioner of
Social Security,

    Defendant.

MEMORANDUM AND ORDER

Plaintiff Diemetrius Johnson has applied for Social Security disability benefits. His application was denied by the Administrative Law Judge (ALJ) on March 14, 2012, a decision affirmed by the Appeals Council on July 19, 2013. Johnson advances three allegations of error in the present appeal: (1) that the ALJ failed to consider the findings of treating provider Christopher Ebberwein (Ph.D.), (2) that the ALJ erred in relying on the assessment of Dr. Gerald Siemsen, who in turn simply ratified the assessment of the single decisionmaker, and (3) the medical source statement of Dr. Moser supports the finding that Johnson cannot stoop, thereby eliminating any possibility of employment. The court finds no error and affirms the decision of the Commissioner.

Plaintiff-claimant Johnson was born in 1970, and has stated that he became disabled

beginning January 15, 2007. He has a high school education, and has been employed as a cook, a washing machine operator, and a temporary worker. He has cited a variety of ailments, including fibromyalgia, bursitis, arthritis, migraines, and depression. The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Dkt. 11-2, Tr. 16-27), the brief of Johnson (Dkt. 16, at 3-60), and the Commissioner. (Dkt. 21, at 2-10).

Johnson first applied for benefits on May 12, 2008. On January 22, 2010, the ALJ found that Johnson could not return to his old work, but could perform other work and therefore was not disabled. This court subsequently affirmed the decision of the Commissioner. *Johnson v. Astrue*, No. 11-1112-JWL (D. Kan. July 25, 2012) (Dkt. 22). Johnson then reapplied for benefits, adjusting the disability onset date to January 20, 2010. Johnson was last insured for benefits on September 30, 2010. Accordingly, the relevant period for the case is January 20 to September 30, 2010.

The ALJ concluded that Johnson suffered from the impairments of obesity, fibromyalgia, migraines, bilateral carpal tunnel, degenerative disk disease, and depression, but that these, whether individually or in combination, did not meet the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1, 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (Tr. 16-18). Johnson retained the ability to lift 20 pounds occasionally and 10 pounds frequently. He can push or pull the same weight, but he should only occasionally climb ladders, ropes or scaffolds. He must avoid extreme heat and dangerous moving machinery. He can perform frequent, but not continuous, fingering and

handling, and can do jobs with simple instructions and which do not require frequent or close public contact. With normal breaks, he can stand or walk for about six hours out of a standard workday, or sit for an equivalent period. (Tr. 18-19). The ALJ further determined that Johnson retained the residual functional capacity (RFC) to perform the full range of light work, and that his non-exertional limitations were not substantial. (Tr. 28). As a result, there remain a significant number of jobs which Johnson is able to perform. (*Id.*)

The Commissioner determines whether an applicant is disabled pursuant to a five-step sequential evaluation process (SEP) pursuant to 20 C.F.R. §§ 404.1520 and 416.920. The applicant has the initial burden of proof in the first three steps: he must show that he is engaged in substantial gainful activity, that he has a medically-determinable, severe ailment, and whether that impairment matches one of the listed impairments of 20 C.F.R. pt. 404, subpt P., app. 1. *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). If a claimant shows that he cannot return to his former work, the Commissioner has the burden of showing that he can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f). *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

The court's review of the Commissioner's decision is governed by 42 U.S.C. 405(g) of the Social Security Act. Under the statute, the Commissioner's decision will be upheld so long as it applies the "correct legal standard," and is supported by "substantial evidence" of the record as a whole. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

Substantial evidence means more than a scintilla, but less than a preponderance. It is satisfied by evidence that a reasonable mind might accept to support the conclusion. The

question of whether substantial evidence supports the Commissioner's decision is not a mere quantitative exercise; evidence is not substantial if it is overwhelmed by other evidence, or in reality is a mere conclusion. *Ray*, 865 F.2d at 224. The court must scrutinize the whole record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

This deferential review is limited to factual determinations; it does not apply to the Commisioner's conclusions of law. Applying an incorrect legal standard, or providing the court with an insufficient basis to determine that correct legal principles were applied, are grounds for reversal. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

As a preliminary matter, the court notes that plaintiff presents three specific assertions of error (Dkt. 16 at 61, 66, 69, presented as "Argument I," "Argument II," and "Argument III"), all of which are addressed below. However, the plaintiff also asserts — in passing as a "Summary Argument" — that the ALJ improperly assessed his credibility, finding him to be "a blatant liar," a determination which "is founded on hubristic assumptions." (*Id*. at 60). The plaintiff's argument is indeed "summary," in the sense that plaintiff makes no attempt to go beyond this purely conclusory allegation.

The court finds no basis for finding erroneous the ALJ's assessment that Johnson was not fully credible. Rather, the ALJ's opinion reflects a thoughtful and measured assessment of the entire record. The ALJ explicitly considered Johnson's credibility in light of "the entire case record." (Tr. 19). This evidence was measured against the standards for assessment set forth in 20 C.F.R. § 404.1929(c), 416.929(c), and S.S.R. 96-7p, specifically:

4

> 1) the claimant's activities of daily living, 2) the location, duration, frequency, and intensity of pain or other symptoms, 3) precipitating and aggravating factors, 4) the type, dosage, effectiveness, and side effects of medications taken to alleviate pain or other symptoms, 5) treatment, other than medication, for relief of pain or other symptoms, 6) any measures other than medication used to relieve pain or other symptoms, and 7) any other factors concerning functional limitations and restrictions due to pain or other symptoms produced by medically determinable impairments.

(Tr. 19)

Here, the ALJ noted multiple facts which undercut Johnson's credibility. For example, Johnson has stated that he has been unable to lift more than 10 pounds since 2009. However, the medical record indicates that on one occasion (Exh. 5F), Johnson reported injuring himself while exercising by lifting weights of 50 to 60 pounds. The ALJ noted that "[t]he only reported consequence" of the incident "was some discomfort in his shoulders." (Tr. 19). More importantly, the ALJ found that the lifting of such weights "certainly suggests greater functional abilities than alleged" by the claimant. (*Id*.)

The ALJ also noted an inconsistency in Johnson's asserted degree of pain (ten out of ten, or a disabling level of pain), and his history of pain medication. Johnson continued to take Lortab, even as he stated that he gained no benefit from it. He also refused to take other medication, on the grounds of relatively minor side effects. For example, he refused to take Gabapentin because it "caused vivid dreams." (Tr. 21). The ALJ noted that in the treatment records Johnson had stated that the use of a TENS unit did not help his back pain; at the hearing, he stated that it did "to the point it almost doubled his alleged ability to stand." (Tr. 20).

The ALJ further noted inconsistencies with Johnson's treatment history. Despite his claims of nearly incapacitating pain in his "whole entire body" including his fingers, hands, wrists, elbows, forearms, shoulders, back, buttocks, knees, ankles, and neck, the treatment history includes Dr. Moser's conclusion in September 2009 that Johnson's fibromyalgia was "improving," and Johnson's own report a short time earlier in which he indicated he had no pain in his legs.

Johnson testified that his pain was such that he could sleep no more than three to four hours. But the medical records indicate that, following medication, Johnson reported he was sleeping well. Further, the ALJ noted an inconsistency in Johnson's description of his migraine headaches. In March, 2010, he reported having three migraines a month. In June of the same year, he stated he was having up to eight a month. At the hearing before the ALJ, Johnson stated he was having three to four a month. More importantly, he testified that he had these headaches for 20 years. As the ALJ noted, this indicated that the migraines were of limited impact, "as the claimant was previously able to work without limitation." (Tr. 23). In addition, the ALJ noted only one instance of a migraine headache after the amended onset date, and that Johnson had indicated to Dr. Moser that his migraines were controlled.

The ALJ further noted inconsistencies in Johnson's description of his back pain. Johnson told Molly Allen (Psy.D.) that his back pain began in 2008, following a motor vehicle accident the year before. But he told Dr. Miller that his back pain began in 1990.

The court finds that the ALJ properly assessed the claimant's credibility based on

the record as a whole. *See Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992).

As to his first formal claim of error in the present appeal, Johnson alleges the ALJ's decision is erroneous in light of "The Ebberwein Omission." (Dkt. 16, at 61). Ebberwein saw Johnson numerous times, and indicated that Johnson's functioning was compromised by his fibromyalgia. However, plaintiff stresses, the ALJ "failed to even mention Dr. Ebbenwein in his decision." (*Id*. at 62).

Error may exist if an ALJ completely fails to address otherwise controlling medical evidence. *See Knight v. Astrue*, 388 Fed. Appx. 768, 771 (10th Cir. July 21, 2010). However, "an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79. F.3d 1007, 1009-10 (10th Cir.1996). The ALJ's responsibility is satisfied if her opinion is "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir.2003).

The court finds no reversible error. The ALJ did not explicitly refer to Dr. Ebberwein by name, but he did explicitly refer to the Wesley Family Practice and Wesley Clinic's medical records containing his opinions, along with those of Dr. Moser. (Tr. Exh. 5F, 14F, 21F). Indeed, the ALJ made explicit reference to Ebberwein's Progress Note of January 1, 2010, in which Ebberwein gave a global assessment of function (GAF) score to Johnson of 55. (Tr. 26, 354; Exh. 5F). As the ALJ noted, this GAF score is indicative of only moderate limitations. The ALJ further explicitly stated that he considered all the evidence in the record, and the court finds no basis for rejecting this representation.

That the ALJ mistakenly attributed the January 1, 2010, note to Dr. Moser rather than Dr. Ebberwein is not grounds for reversal of the otherwise careful and considered opinion by the ALJ. The opinion addresses all the evidence in the record, and the opinion satisfies the requirement of making clear the basis for the ALJ's rulings. Further, Dr. Ebberwein's opinions (Tr. 349, 351, 353, 464, 466, 496, 504, 508, 510, 514, 516, 524, 526) generally indicate moderate medical effects, and never indicate an RFC greater than that adopted by the ALJ.

Johnson next claims that the ALJ erred by relying on the opinion of Dr. Gerald Siemsen, a state agency physician who "simply ratif[ied] the findings of the single decisionmaker." (Dkt. 16, at 66). Further, he notes, the decision of the single decisionmaker (SDM) was rendered before the October 8, 2010, opinion by Dr. Sitha Miller. (*Id*. at 67-68).

The SDM model is a modification to the disability determination process used by the Social Security Administration in which a governmental employee renders an initial disability determination "after any appropriate consultation with a medical or psychological consultant." 20 C.F.R. § 404.906. Because SDMs are laypersons, their opinions are not acceptable medical sources or non-medical sources of opinion evidence under 20 C.F.R. § 404.1513, § 404.1527(a)(2), or SSR 06–[0]3p.

Here, the SDM's assessment from April 2010 was not used as medical or non-medical source evidence, and plaintiff cites no authority for the proposition that a consultative opinion by a physician cannot take note of, or otherwise reference, an earlier opinion by an SDM. The ALJ gave significant weight to the opinion of Dr. Siemsen, and found that it was consistent with both the objective medical evidence and Johnson's

allegations of pain. (Tr. 25).

There is no evidence that Dr. Siemsen ignored Dr. Miller's assessement; Dr. Siemsen specifically stated that he rendered his November 8, 2010, opinion after reviewing "all the evidence in the file." (Tr. 483). Further, the ALJ explicitly took account of Dr. Miller's report in assessing Johnson's RFC. (Tr. 21-24). The court finds no error in the ALJ's decision to give significant weight to Dr. Siemsen's opinion.

Johnson's final argument is that the ALJ erred in failing to give weight to Dr. Moser's opinion that plaintiff should never crouch, squat, or climb stairs, and only rarely should twist or stoop. Under Social Security Ruling 96-9p, the inability to stoop substantially erodes the number of jobs which a person can perform. *See Hicks v. Astrue*, 2011 WL 1113714, \*4 (D. Kan. March 24, 2011) ("a limitation to occasional stooping, by itself, would only minimally erode the unskilled sedentary base").

Plaintiff places particular weight on *Tyson v. Apfel*, 107 F.Supp.2d 1267, 1269 (D. Colo. 2000), which recognized that "a complete inability to stoop will significantly erode the occupational base for sedentary work." In *Tyson*, however, the claimant's treating physician had directly opined that his condition completely "precluded *all* stooping." 107 F.Supp.2d at 1269 (emphasis added). The court stressed that this was the *only* evidence in the case — "[n]o other doctor specifically addressed the issue" of stooping. The ALJ erred because he completely "ignored" the stooping restriction "[w]ithout explanation." *Id.*

The ALJ's opinion in the present case does not reflect a cavalier rejection of Dr. Moser's opinion. Rather, the ALJ explicitly determined that Dr. Moser's opinion should be

9

given limited weight in light of the lack of support for that opinion in the medical evidence, including Dr. Moser's own treatment notes. (Tr. 25). In addition, Dr. Moser's opinion rested almost entirely upon Johnson's own subjective complaints of pain. As noted earlier, the ALJ determined that Johnson's credibility was limited. The weight accorded a treating physician may be reduced if it rests heavily on plaintiff's own subjective complaints and is contrary to the weight of the evidence. *See Brescia v. Astrue*, 287 Fed.Appx. 626, 630 (10th Cir. 2008); *Thunderbull v. Barnhart*, 85 Fed.Appx. 67, 69 (10th Cir. 2003) (citing *Rankin v. Apfel*, 195 F.3d 427, 430 (8th Cir. 199); *Haynes v. Callahan*, 976 F.Supp.2d 1268, 1272 (D. Kan. 1998).

In addition, Dr. Moser's opinion was inconsistent with other evidence in the record showing minimal impairment, including the opinion of the State Disability Determination Service's opinions. Thus, while Dr. Moser checked the box indicating that Johnson should stoop "rarely" (Tr. 474), there is little or no objective evidence to support this conclusion. In his testimony, Johnson did not state that he had any problem with stooping, and the ALJ explicitly noted Johnson's practice of sitting on the floor during treatment sessions "ostensibly to accommodate his pain." (Tr. 24). This practice was inconsistent, the ALJ observed, with an inability to stoop. (Tr. 24). Further, the ALJ noted that during his hearing testimony, Johnson frequently moved from sitting to standing to kneeling. (Tr. 64).

IT IS ACCORDINGLY ORDERED this day of March, 2015, that the decision of the Commissioner is hereby AFFIRMED.

```
                              S/ J. Thomas Marten
```
                                              J. THOMAS MARTEN, JUDGE